**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dameon Ray Jones, | ) | Case No. 1:21-cr-076 |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Defendant's motion to suppress filed on February 19, 2022.  See

Doc. No. 31.  The Government filed a response in opposition to the motion on March 7, 2022.  See

Doc. No. 34.  A hearing on the motion was held on April 27, 2022.  Both parties filed post-hearing

briefs on May 6, 2022.  See Doc. Nos. 41 and 42.  For the reasons set forth below, the motion is

denied.

I.      **BACKGROUND**

The Court held a suppression hearing on April 27, 2022.  Bismarck Police Officers Zachary

Collins and Brennan Bennington testified at the hearing.  The factual background is derived from

the testimony and reports of Officers Collins and Bennington, Officer Collins' affidavit, and the

dash cam videos of the incident.

On Saturday, January 23, 2021, Officer Collins spoke to staff about some suspicious activity

at the Days Inn in north Bismarck, North Dakota.  He also obtained a guest list.  The rooms where

the suspicious activity was taking place were registered to Shanunique Ruffin.  Two vehicles

associated with the rooms registered to Ruffin were also identified including an orange Dodge

Dakota pickup truck registered to the Defendant, Dameon Jones.  Officer Collins learned from a

local DEA agent that Ruffin and Jones were associated with the Country Boy Crips gang, Ruffin

was known to sell heroin, and Ruffin had a prior incident with the DEA in Dickinson, North Dakota,

during which she pulled a handgun.  Having learned all this on Saturday, January 23, 2021, Officer

Collins continued his observation of the Days Inn during his shift on Sunday, January 24, 2021.

At approximately 12:07 p.m. on Sunday, January 24, 2021, Bismarck Police Officer Collins

observed an orange Dodge Dakota and a second vehicle leave the Days Inn parking lot in north

Bismarck.  The vehicles were the same two vehicles associated with the rooms rented by Ruffin at

the Day Inn and were traveling together.  Officer Collins followed the Dodge Dakota and proceeded

to run its license plate through his onboard computer in his police SUV.  Officer Collins learned

through his computer inquiry that the orange Dodge Dakota was registered to Dameon Jones and

that he had a valid North Dakota drivers license.  Officer Collins was able to pull alongside the

Dodge Dakota and visually verify Dameon Jones was driving the vehicle by comparing the photo

on his computer with the driver of the vehicle.  Officer Collins also observed there was a passenger

in the vehicle.  The onboard computer also displayed three unconfirmed outstanding warrants for

a "Demone Darnell Jones" out of Dickinson, North Dakota, and that Dameon Jones and Demone

Jones had the same date of birth.  Dameon Jones and Demone Jones are twin brothers.  As the

Dodge Dakota traveled southbound on State Street in Bismarck after leaving the Days Inn, Officer

Collins identified the driver of the vehicle as Dameon Jones.

Why the police computer displayed warrants for someone other than Dameon Jones on the

screen related to his vehicle and his drivers license is unknown, although the names are very similar

and the birthdates are identical.  Demone Darnell Jones had a California-issued driver's license

bearing the number "AOO226433" and also includes his Social Security number ending in 3612.

Dameon Jones has a North Dakota-issued driver's license bearing the number "JON865574" and

also includes his Social Security number ending in 5177.

The three warrants upon which Officer Collins based his decision to initiate the traffic stop

were actually for Jones' twin brother "Demone Darnell Jones."  The three warrants for Demone

Darnell Jones were for (1) failure to pay $225.00 in a driving under suspension case

(45-2017-CR-01156); (2) failure to pay $450.00 and complete a chemical evaluation in a driving

under the influence case (45-2017-CR-01149); and (3) a criminal summons to appear or post bond

for a missed initial appearance on a second driving under suspension case (45-2019-CR-00547).

Officer Collins initiated a traffic stop of Jones' vehicle in the 700 block of East Avenue F

in Bismarck at 12:09:50 based upon the outstanding warrants for Damone Jones, which Officer

Collins mistakenly believed were for Dameon Jones.  Officer Collins immediately requested

backup.  Officer Collins approached the vehicle and asked the driver for his name.  The driver

responded that his name was "Dameon Jones."  Officer Jones then asked the front seat passenger

for his name to which the passenger responded "Marcus Burrell."  Following Bismarck Police

Department policy regarding traffic stops for outstanding warrants, Officer Collins then ordered

Jones out of the vehicle and directed him to place his hands behind his back in order that he could

be handcuffed.  After handcuffing Jones, Officer Collins informed him he may have some

outstanding warrants.  Jones was then taken to the front of Officer Collins' patrol vehicle and asked

if he would permit himself to be searched.  Jones consented and was then frisked.  During the frisk,

Officer Collins discovered a 9mm handgun concealed in Jones' waistband.  Jones was then placed inside Officer Collins' patrol vehicle.  Shortly thereafter a check of the serial number on the handgun revealed it was stolen and the initial report regarding the stolen handgun was made at the Dickinson Police Department.  The outstanding warrants were confirmed as valid.

Officer Collins then reapproached the Dodge Dakota and asked the passenger to exit the vehicle.  At this time backup arrived.  Upon arriving, Officer Bennington viewed Officer Collins beginning to detain the passenger.  Officer Collins asked Officer Bennington to handcuff the passenger because he needed to address another vehicle associated with the traffic stop.  Officer Collins' dash camera shows another vehicle stopped up the road from Jones' Dodge Dakota.  The two vehicles had been traveling together.  Officer Collins located Ruffin in the second vehicle which eventually left the scene as there was no reason to detain the occupants of the second vehicle. The passenger in Jones' vehicle was also released.

After the gun found on Jones was determined to be stolen, he was read his *Miranda* rights and arrested.  Jones agreed to be interviewed and was then taken to the Bismarck Police Department. The interview was recorded. Jones made a number of incriminating statements during the interview.  Throughout the day of the arrest and the interview, the arresting officers continued to believe the outstanding warrants were for Dameon Jones and the discrepancy in the name was a misspelling.

Jones was initially charged in North Dakota state court with possession of a stolen firearm. Jones was later indicted in federal court and charged with possession of a firearm by a convicted felon and possession of a stolen firearm in violation of 18 U.S.C. § 922(g)(1) and 922(j).

II.     **LEGAL DISCUSSION**

A.      **THE STOP OF THE VEHICLE**

It is undisputed that the warrants upon which Officer Collins relied in order to initiate a

traffic stop on Dameon Jones' vehicle were not actually warrants issued for Dameon Jones.  Jones

contends the mistake was not objectively reasonable.  The Government contends Officer Collins'

conduct was reasonable under the circumstances.

A traffic stop constitutes a seizure under the Fourth Amendment.  See United States v.

Hollins, 685 F.3d 703, 705-06 (8th Cir. 2012); United States v. Payne, 534 F.3d 948, 951 (8th Cir.

2008).  "For purposes of constitutional analysis, a traffic stop is characterized as an investigative

detention" which is governed by the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968) such

that an officer must have probable cause or a reasonable, articulable suspicion that the vehicle or

its occupants are involved in illegal activity before conducting a stop.  United States v. Jones, 269

F.3d 919, 925 (8th Cir. 2001).  Courts assess reasonable suspicion from the point of view of the

officer based upon the totality of the circumstances known to the officer at the time.  United States

v. Zamora-Lopez, 685 F.3d 787, 790 (8th Cir. 2012).

A determination of whether probable cause or reasonable suspicion existed is not to be made

with the benefit of hindsight, but rather by looking at what the officer reasonably knew at the time.

Hollins, 685 F.3d at 706.  A reasonable suspicion must be more than a hunch.  See United States

v. Walker, 555 F.3d 716, 719 (8th Cir. 2009).  "[A]n officer may stop and question a person if there

are reasonable grounds to believe that person is wanted for past criminal conduct."  United States

v. Cortez, 269 F.3d 919, 923 n.3. (8th Cir. 2001).  In cases of mistake, the question is  whether the

mistake, whether of law or of fact, was objectively reasonable. United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). A reasonable, but mistaken, belief or premise may justify an investigative stop if officers are reasonable in acting upon the mistake belief. United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005).

In this case, there appears to have been some sort of administrative or technical error which resulted in warrants for the Defendant's twin brother (Demone Jones) being linked to the Defendant in the computer system in Officer Collins' patrol vehicle. The two brothers are twins with the same birth date and very similar names; Dameon Jones and Demone Jones. The similar name could also have been construed as an alias. That Officer Collins did not detect the error before he made the traffic stop is fully understandable. The touchstone of Fourth Amendment analysis is reasonableness. Under these circumstances the Court cannot say Officer Collins acted unreasonably. See United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999) (assessing the validity of a stop must be based upon whether there was an objectively reasonable basis for the stop based upon "what the officer reasonably knew at the time"). The Court concludes that Officer Collins' mistaken belief there were outstanding warrants for Dameon Jones was objectively reasonable and thus the stop of the vehicle he was driving was permissible.

### B.  DETENTION AND SEARCH

Jones contends his immediate detention and frisk after being pulled over was unreasonable under the Fourth Amendment. The Government maintains Officer Collins acted reasonably and Jones consented to the frisk.

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court considered whether an investigatory stop (temporary detention) and frisk (patdown for weapons) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures. The Court upheld "stop and frisk" as constitutionally permissible if two conditions are met. First, the investigatory stop must be lawful. Id. at 21-22. That requirement is met when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Id. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous. Id. at 27.

The Court has already determined the traffic stop was lawful based upon Officer Collins' reasonable belief, albeit mistaken, that Dameon Jones had outstanding warrants. Whether it was reasonable to believe Jones was armed and dangerous presents a closer question.

In this case Officer Collins had information that Dameon Jones was associated with the Country Boy Crips gang and he was associated with Ruffin who was known to sell heroin, carry firearms, and associate with the Country Boy Crips gang. Officer Collins had a good faith belief that Dameon Jones had outstanding warrants. Officer Collins also knew Jones and Ruffin had spent the last two nights in the Days Inn where suspicious activity indicative of drug trafficking was observed in relation to the rooms rented by Ruffin. Further, that drug dealers often carry firearms is well understood and common knowledge among law enforcement officers.

Traffic stops are especially dangerous for police officers. Rodriguez, 135 S. Ct. at 1616. Under the circumstances outlined above, the Court finds that it was reasonable to remove Jones from his vehicle, handcuff him, and frisk him before verifying the warrants. United States v. Miller,

974 F.2d 953, 957 (8th Cir. 1992) (use of handcuffs permissible during *Terry* stop); United States

v. Bueno, 443 F.3d 1017, 1025 (8th Cir. 2006) (concerns for officer safety permit police officers

to order the driver of a vehicle to exit the vehicle during a traffic stop).  The touchstone of a Fourth

Amendment analysis is always "'the reasonableness in all the circumstances of the particular

governmental invasion of a citizen's personal security.'"  Pennsylvania v. Mimms, 434 U.S. 106,

108-09 (1977) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)).  The Court finds that Officer Collins

conduct in frisking Dameon Jones to be reasonable.

More important, Dameon Jones consented to the search of his person.  "While the Fourth

Amendment does not permit warrantless searches, law enforcement may conduct such a search if

they obtain a resident's voluntary consent."  United States v. Quintero, 648 F.3d 660, 667 (8th Cir.

2011).  Courts review the totality of the circumstances when determining whether consent is

voluntary.  Id.  At the time of the stop, Dameon Jones was a sober adult with prior experience in the

criminal justice system.  His detention prior to the request to search was brief and was not

accompanied by any threats, promises, or physical intimidation.  While Jones was not *Mirandized*,

it is undisputed from the record before the Court that Jones did not object to being frisked.  Under

the totality of the circumstances, the Court finds Jones voluntarily consented to the search.


III.   **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' arguments, the evidence

presented at the suppression hearing, and the relevant case law.  For the reasons outlined above, the

motion to suppress (Doc. No. 31) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 12th day of May, 2022.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court